No. 23-35014

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MONTANA MEDICAL ASSOCIATION, et al.,

*Plaintiffs-Appellee,*

MONTANA NURSES ASSOCIATION,

*Intervenor-Plaintiff-Appellee,*

v.

AUSTIN KNUDSEN, Montana Attorney General, et al.,

*Defendants-Appellants,*

Appeal from the United States District Court for the
District of Montana

No. D.C. No. 9:21-cv-00108-DWM (Hon. Don W. Molloy)

## **APPELLANTS' REPLY BRIEF**

AUSTIN KNUDSEN
Montana Attorney General

MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
christian.corrigan@mt.gov
brent.mead2@mt.gov
michael.russell@mt.gov

CHRISTIAN B. CORRIGAN
*Solicitor General*

BRENT MEAD
*Deputy Solicitor General*

MICHAEL D. RUSSELL
*Assistant Attorney General*

*Attorneys for Defendants-Appellants*

TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................i

TABLE OF AUTHORITIES.............................................................. II

INTRODUCTION...........................................................................1

BACKGROUND..............................................................................2

ARGUMENT..................................................................................4

I.  Federal law doesn't preempt HB702. ....................................... 4

   A.  The ADA doesn't facially preempt HB702......................... 4

       1.  Plaintiffs failed to make out a prima facie ADA claim and the
           district court failed to make fact-specific case-by-case
           determinations. ...................................................... 7

       2.  The district court erred in interpreting MCA § 49-2-312(3)(b)...12

   B.   The district court incorrectly determined that the OSH
        Act's general duty clause preempts HB702. .......................... 14

   1.  The OSH Act expressly saves generally applicable state laws...14

   2.  The general duty clause doesn't apply. ......................... 17

   3.  The district court failed to apply necessary presumptions against
       preemption. ............................................................. 21

   C.   The Court should apply *Munsingware* vacatur to the CMS
        claims. .................................................................. 22

II. HB702 doesn't violate equal protection...............................25

   A.   Plaintiffs fail to establish similarly situated classes.............25

   B.   HB702 easily satisfies rational basis review. ................. 30

CONCLUSION ............................................................................ 37

CERTIFICATE OF COMPLIANCE ................................................. 38

CERTIFICATE OF SERVICE ........................................................ 38

TABLE OF AUTHORITIES

## Cases

*Allied Concrete & Supply Co. v. Baker,*
   904 F.3d 1053 (9th Cir. 2018) ......................................................... 33

*Ariz. Dream Act Coal. v. Brewer,*
   855 F.3d 957 (9th Cir. 2017) ......................................... 26, 27, 28, 35

*Biden v. Missouri,*
   142 S. Ct. 647 (2022) ......................................................... 18

*Boardman v. Inslee,*
   978 F.3d 1092 (9th Cir. 2020) ........................................... 29

*Boumediene v. Bush,*
   553 U.S. 723 (2008) ......................................................... 13

*Brnovich v. Biden,*
   562 F. Supp. 3d 123 (D. Ariz. 2022) ................................. 36

*Chamber of Com. of the U.S. v. Whiting,*
   563 U.S. 582 (2011) ............................................................ 4

*Chicanos Por La Causa, Inc. v. Napolitano,*
   544 F.3d 976 (9th Cir. 2008) ......................................... 6, 22

*Christian Heritage Academy v. Oklahoma Secondary Sch.*
*Activities Ass'n,*
   483 F.3d 1025 (10th Cir. 2007) ....................................... 35

*City of L.A. v. AECOM Servs.,*
   854 F.3d 1149 (9th Cir. 2017) .................................. *passim*

*City of L.A. v. Barr,*
   941 F.3d 931 (9th Cir. 2019) ........................................... 14

*Colchester v. Lazaro,*
   16 F.4th 712 (9th Cir. 2021) ............................................. 3

*Dent v. West Virginia*,
129 U.S. 114 (1889) ............................................................ 36

*Divine Allah v. Goord*,
405 F. Supp. 2d 265 (S.D.N.Y. 2005) .................................. 9

*Donovan v. Vance*,
70 F.4th 1167 (9th Cir. 2023) ........................................ 22, 23, 24, 25

*E.T v. Paxton*,
41 F.4th 709 (5th Cir. 2022) ................................... 5, 11, 12

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) ............................................ 22

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
753 F.3d 862 (9th Cir. 2014) ............................................ 9

*FCC v. Beach Commc'ns*,
508 U.S. 307 (1993) .......................................................... 32

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......................................................... 23

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) .......................................... 32

*Flower World, Inc. v. Sacks*,
43 F.4th 1224 (9th Cir. 2022) ........................... 14, 15, 17, 18

*Flower World, Inc. v. Sacks*,
2021 U.S. Dist. LEXIS 145251 (W.D.Wash. Aug. 3, 2021) .............. 15

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) .......................................... 9

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) ...................................................... 15, 16

*Gallinger v. Becerra*,
898 F.3d a (9th Cir. 2018) ............................... 25, 30, 34, 35

*Gonzales v. Carhart*,
550 U.S. 124 (2007) .......................................................... 36

*Heller v. Doe,*
    509 U.S. 312 (1993) ..................................................................... 25, 30

*Indus. Truck Ass'n, Inc. v. Henry,*
    125 F.3d 1305 (9th Cir. 1997) ........................................................ 15

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) .............................................................. 20, 35, 36

*Kitlutsisti v. ARCO Alaska, Inc.,*
    782 F.2d 800 (9th Cir. 1986) ....................................................... 24, 25

*Landgraf v. Usi Film Prods.,*
    511 U.S. 244 (1994) ........................................................................ 24

*Melendres v. Arpaio,*
    784 F.3d 1254 (9th Cir. 2015) ........................................................ 29

*Merrifield v. Lockyer*
    547 F.3d 978 (9th Cir. 2008) ..................................................... 33, 34

*NASD Disp. Resol., Inc. v. Jud. Council,*
    488 F.3d 1065 (9th Cir. 2007) ................................................... 23, 24

*Nat'l Fed'n of Indep. Bus. V. DOL, OSHA ,*
    142 S. Ct. 661 (2022) ............................................................. *passim*

*Nordlinger v. Hahn,*
    505 U.S. 1 (1992) ....................................................................... 31, 33

*Nunes v. Wal-Mart Stores, Inc.,*
    164 F.3d 1243 (9th Cir. 1999) ......................................................... 8

*Ramsey Winch, Inc. v. Henry,*
    555 F.3d 1199 (10th Cir. 2009) ............................................ 15, 16, 17

*Reich v. Mont. Sulphur & Chem. Co.,*
    32 F.3d 440 (9th Cir. 1994) ....................................................... 17, 18

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947) .......................................................................... 4

*Roman Cath. Diocese v. Cuomo,*
    141 S. Ct. 63 (2020) ......................................................................... 1

iv

*Ross v. Moffitt,*
417 U.S. 600 (1974) ............................................................ 28

*S. Bay United Pentecostal Church v. Newsom,*
140 S. Ct. 1613 (2020) .................................................... 35-36

*Sch. Bd. of Nassau Cnty. v. Arline,*
480 U.S. 273 (1987) ............................................................ 7

*Silveira v. Lockyer,*
312 F.3d 1052 (9th Cir. 2002) ......................................... 34

*Swan v. Peterson,*
6 F.3d 1373 (9th Cir. 1993) ........................................ 4, 35

*Trump v. Hawaii,*
138 S. Ct. 2392 (2018) ............................................... 34, 35

*Tucson Woman's Clinic v. Eden,*
379 F.3d 531 (9th Cir. 2004) ...................................... 31, 33

*United States v. Devlin,*
13 F.3d 1361 (9th Cir. 1994) ................................. 26-27, 28

*United States v. Munsingwear, Inc.,*
340 U.S. 36, 39 (1950) ......................................... 23, 24, 25

*US Airways, Inc. v. Barnett,*
535 U.S. 391 (2002) ........................................................... 11

*Willis v. Pac. Mar. Ass'n,*
244 F.3d 675 (9th Cir. 2001) ........................................... 11

*Wyeth v. Levine,*
555 U.S. 555 (2009) ........................................................... 21

*Zucht v. King,*
260 U.S. 174 (1922) ............................................................. 6

# OTHER AUTHORITIES

## UNITED STATES CODE

21 U.S.C. § 321(g) ............................................................... 18

29 U.S.C. § 655 ................................................................... 14

29 U.S.C. § 667(a) ......................................................... 14, 16

42 U.S.C. § 262(i)(1) ........................................................... 18

42 U.S.C. § 264(a) .............................................................. 18

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 52 ........................................................................... 3, 29

## CODE OF FEDERAL REGULATIONS

29 C.F.R. § 1904.1(a)(1) ...................................................... 31

29 C.F.R. § 1910.1030(f)(1)(i), (f)(2)(i) ................................. 19

## FEDERAL REGISTER

86 Fed. Reg. 26306 ............................................................. 26

88 Fed. Reg. 36485, 36488 .................................................. 23

88 Fed. Reg. 36488 ............................................................. 24

86 Fed. Reg. 61406 ............................................................. 15

86 Fed. Reg. 61440 ............................................................. 19

86 Fed. Reg. 61442 ............................................................. 21

86 Fed. Reg. 61442–43 ................................................... 20, 21

86 Fed. Reg. 61567–68 ........................................................ 20

86 Fed. Reg. 61436 ............................................................. 19

## MONTANA CODE ANNOTATED

MCA § 20-5-403 ................................................................. 37

MCA § 49-2-312 ......................................................... 1,24, 26

MCA § 49-2-312(3)(b) .................................................... 12, 13

MCA § 49-2-313 ................................................................ 1, 26

MCA § 50-5-101(6) .............................................................. 27

MCA § 50-5-101(25) ............................................................. 27

MCA § 50-5-101(26)(a) .......................................................... 32

MCA § 50-5-101(26)(b) .......................................................... 33

MCA § 50-5-101(31) ............................................................. 27

MCA § 50-5-225 ................................................................. 27

MCA §§ 50-5-227(1)–(3) ......................................................... 27

MCA § 50-5-226(8)(d) ........................................................... 27

MCA §§ 50-5-1101 ............................................................... 27

MONTANA ADMINISTRATIVE RULE

Rule 37.114.705.................................................................. 37

PUBLICATIONS

THE DECLARATION OF INDEPENDENCE (U.S. 1776) ............................... 1

THE FEDERALIST NO. 45 (Clinton Rossiter ed., 2003) ......................... 1

## INTRODUCTION

Heeding the Supreme Court's warning that "even in a pandemic, the Constitution cannot be put away and forgotten," *Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 68 (2020), Montana enacted House Bill 702 ("HB702")[1] to safeguard individual privacy and personal autonomy. Plaintiffs disagree, finding it illegitimate to (allegedly) elevate "individual rights over the public good." Opp'n.Br.54. That's bad philosophy masquerading as law. Since America's founding, government secures— not destroys—individual rights. *See* THE DECLARATION OF INDEPENDENCE para. 2 (U.S. 1776) ("to secure these rights, governments are instituted among men"). Moreover, the people—through their elected representatives—determine what serves the public good, not the Plaintiffs. *See* THE FEDERALIST No. 45 at 289 (Clinton Rossiter ed., 2003) ("The powers reserved to the several States will extend to all the objects, which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people; and the internal order, improvement, and prosperity of the State.").

---

[1] Codified at MCA §§ 49-2-312, -313 (2021).

BACKGROUND

Plaintiffs create a stealth vaccination mandate lurking within the Americans with Disabilities Act ("ADA") and the Occupational Health and Safety Act ("OSH Act"). They surmise these Acts and the Fourteenth Amendment require adherence to a national vaccine standard. Opp'n.Br.59. The facts don't support any such standard.

Plaintiffs Providence, Five Valleys Urology ("FVU"), Western Montana Clinic ("WMC"), and Intervenor all imposed different vaccination policies before and after HB702. Intervenor collectively bargained for no mandatory vaccinations. 2-ER-151, 2-ER-177. FVU didn't require any vaccinations. 2-ER-134. WMC recommended the flu shot, but let people opt-out if they "do not want one." 2-ER-96:20–97:12. Providence recommended but didn't require vaccinations like MMR and Tdap. 2-ER-209–210. Plaintiffs' vaccination policies never required the vaccinations they now tell this Court are required. Opp'n.Br.1. These policies predate HB702. *E.g.*, 2-ER-151, 2-ER-177, 2-ER-134, 2-ER-96–97, 2-ER-116. Some remain in effect today. 2-ER-116, 2-ER-209–210; 2-ER-177.

All Institutional Plaintiffs supported and granted exemptions to required or recommended vaccinations. 2-ER-96:4–12; 2-ER-134; 2-ER-

2

208; FER-51. As for declinations, Providence testified that declining a vaccine did not provide them information about an individual's vaccination status. 2-ER-115. WMC testified that it did. 2-ER-96. The district court never reconciled this testimony.[2]

Despite their internal variance, Plaintiffs divine a uniform standard in federal law. Opp'n.Br.59. That's not the record.

---

[2] Rule 52(a) requires "the district court's findings to be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Colchester v. Lazaro*, 16 F.4th 712, 727 (9th Cir. 2021); Opening.Br.13. Plaintiffs improperly attempt to buttress the district court's deficiencies with citations to contested trial testimony and exhibits. Similarly, the State and Plaintiffs contest the meaning of competing statements from Diana Jo Page. *Compare* Opening.Br.32 to Opp'n.Br.; *see also* Opp'n.Br.18–24. But the district court's failure to acknowledge that testimony and make a clear credibility determination violates Rule 52(a). *Colchester*, 16 F.4th at 728. Elsewhere Plaintiffs repeatedly state the "district court determined" or the "district court found" factual findings without pointing to where the district court opinion reaches that finding. *E.g.*, Opp'n.Br.18. As the State argued, the opinion is problematic because it failed to make sufficiently clear findings enabling review by this Court. Opening.Br.13. This Court should reject Plaintiffs' contentions. *See Colchester*, 16 F.4th at 728 ("[T]he [Rule 52(a)(1)] duty is not waived—indeed it is at its most exacting—when as in this case plaintiff and defendant testify inconsistently and it is impossible to demonstrate by objective evidence which one is telling the truth, or more of the truth" (quotation marks omitted)).

Finally, this Court should not consider arguments raised for the first time on appeal by Amici American Medical Association. Dkt. 30. Plaintiffs didn't plead a substantive due process claim. 3-ER-544–570; 3-ER-575–602. This Court does not "consider on appeal an issue raised only by an amicus." *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993).

## ARGUMENT

## I. Federal law doesn't preempt HB702.

Federal preemption of state law is disfavored and warranted only for actual and unavoidable conflict. *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *accord City of L.A. v. AECOM Servs.*, 854 F.3d 1149, 1159 (9th Cir. 2017).

The district court and Plaintiffs ignored controlling case law applying presumptions against preemption. Opening.Br.16–17; 1-ER-20, 1-ER-25; Opp'n.Br.15.

### A. The ADA doesn't facially preempt HB702.

The ADA's general right to a reasonable accommodation cannot facially preempt state laws. *City of L.A.*, 854 F.3d at 1155 (ADA "expressly

4

disavows preemptive federal occupation of the disability rights field"); *see also* Opening.Br.34 n.6. Both Title I and Title III claims require fact-specific analysis before a court can find that a plaintiff was denied a reasonable accommodation. *See* Opening.Br.18–19 (collecting controlling cases).

HB702 doesn't, in the abstract, prevent employers from providing reasonable accommodations to employees or patients. And on the ground, the district court's limited factual findings fail to show that any requests for "reasonable accommodations" were made or, necessarily, that any such requests were denied. *See* Opening.Br.21–22, 24–25 (pointing to absence of factual findings); *see also E.T v. Paxton*, 41 F.4th 709, 718 (5th Cir. 2022) (no conflict between federal and state law without such a request). Even the trial testimony that Plaintiffs marshal in support of the district court's deficient factual findings exposes that there's no actual conflict between HB702 and the ADA. *See* Opp'n.Br.29 (FVU *granted* two accommodation requests without inquiring into other

employees' vaccination status or requiring any vaccinations).[3]  Without facts showing an "actual conflict" between HB702 and the ADA— "not merely a hypothetical or potential conflict"—Plaintiffs' ADA preemption claims fail.  *See Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976, 983 (9th Cir. 2008).  The district court erred by relieving Plaintiffs of their burden to make that prima facie showing.

Because vaccination and civil rights are matters "in which states have historically had the power to regulate," the district court should have "appl[ied] the presumption against preemption" and looked for a "clear and manifest [congressional] purpose" to preempt HB702 (or statutes like it).  *See City of L.A.*, 854 F.3d at 1159 (civil rights); *see also Zucht v. King*, 260 U.S. 174, 176 (1922) (compulsory vaccination).    Had it done so, it would have found that HB702 and the ADA can comfortably coexist.

---

[3] The district court ignored other evidence of reasonable accommodations that HB702 permits.  *See* 1-ER-23; 2-SER-347 (noting "low-cost solutions" to accommodate individuals at higher risk to COVID-19 based on disability).  Recognizing that health care settings are unable to completely prevent patients from exposure to non-immune staff, the district court said that health care settings could use non-vaccination interventions like "personal protective equipment" or "physical distancing" to accommodate patients.  1-ER-23.  But nothing in HB702 prevents any health care facility from implementing uniform protective measures.  2-SER-409.

For example, the ADA sits alongside other federal law, like Title VII, and contemplates that some will seek religious accommodations *from* compulsory vaccinations, *e.g.*, 2-SER-381, or even accommodations based on contagion, *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 288 (1987). If these accommodation requests don't generally conflict with the ADA, the district court should have presumed that HB702 doesn't either. *City of LA*, 854 F.3d at 1159.

> ### 1. *Plaintiffs failed to make out a prima facie ADA claim and the district court failed to make fact-specific case-by-case determinations.*

Before a court can find that the ADA preempts state law—for either the Title I or Title III claim—Plaintiffs must show that they requested a reasonable ADA accommodation that conflicts with state law. *See* Opening.Br.20 (collecting cases). But Plaintiffs identified no *reasonable* requests under the ADA, for either their Title I or Title III claims, so they necessarily failed to show that the ADA preempts HB702. Opening.Br.21–25. Plaintiffs essentially concede this failure, *see* Opp'n.Br.32 ("need not prove … in one particular case" that HB702 caused discrimination sufficient to "sustain a private ADA claim"), arguing instead—*without citation to any authority*—that they prevail if HB702 "conflicts

with the ADA's requirements and objectives" and "they have a particularized stake in that conflict." Opp'n.Br.32. Convenient as that might be, it's not the law. *See* Opening.Br.21–29.

Starting with their Title I claim, Plaintiffs failed to show that any disabled individual sought (and was denied) a reasonable accommodation under the ADA. *See* Opening.Br.21–22 (no disabled individuals suffered employment discrimination based on others' vaccination or immunity status). They also failed to show that HB702 prevents covered facilities from implementing case-specific reasonable accommodations. Opening.Br.22 (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)). Indeed, the evidence showed that one facility maintained its pre-HB702 vaccination policies after HB702's enactment, other settings routinely granted medical and religious exemptions, and others didn't even track vaccination status before HB702. *See supra* at 2–3.

Moving to their Title III claim, Plaintiffs failed to show that the ADA's public accommodation provisions preempt HB702.[4] As detailed in Montana's opening brief, neither the Institutional Plaintiffs nor the Patient Plaintiffs pointed to facts establishing an actual conflict between the ADA's public accommodation provisions and HB702. Opening.Br.23–25. The Institutional Plaintiffs identified no examples of individuals requesting reasonable accommodations based on healthcare workers' vaccination or immunity status or being denied access to their facilities

---

[4] Plaintiffs again rely on a Title II case to support their Title III claim. Opp'n.Br.26–27 (citing *Divine Allah v. Goord*, 405 F. Supp. 2d 265, 280 (S.D.N.Y. 2005)). But Title II cases are irrelevant to Title III claims. And Plaintiffs fail to cite a *single* Title III ADA case that preempts state law. *See* Opp'n.Br.26–27. It's likely none exist. *See* Buckeye.Amicus.Br.17–18. That's because they apply to different actors and prohibit different discriminatory actions. *See City of L.A.*, 854 F.3d at 1153–54 (Title II applies to discrimination by public entities); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (Title III applies to "private entit[ies]" employing "a discriminatory policy or practice" in public accommodations). Plaintiffs seek to revive their Title III claim with trial testimony from Ms. Page that "she was prevented from seeking health care because she could not be treated by vaccinated staff." Opp'n.Br.27 (citing 1-SER-58:19–59:24). Even if this Court should consider this testimony—and it shouldn't, *see supra* note 2—the testimony shows that Ms. Page opted to forgo medical treatment for an asthma attack out of concern for her husband, not the vaccination status of any healthcare worker. 1-SER-58:19–59:16; *see Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867–68 (9th Cir. 2014) (Title III doesn't apply to the non-futile choice to forgo medical services).

9

because of HB702.  Opening.Br.24–25.  And the Patient Plaintiffs failed show any instance when they sought a reasonable accommodation based on a healthcare worker's vaccination status or when they were prevented from accessing services based on that status.  Opening.Br.25.

The district court erred by failing to harmonize HB702 with the ADA.  Opening.Br.25–29.  Both laws combat discrimination and require individualized analysis for reasonable accommodation determination.  Opening.Br.25–26.  And in the vaccine context, that often requires employers to accommodate *unvaccinated* workers under federal law.  Opening.Br.26.  Even so, federal preemption remains as an affirmative defense to potential state law liability—the availability of which turns on the facts and regulations in a specific case.  Opening.Br.25–27.  For these reasons, if faced with an accommodation request, Plaintiffs must follow the ADA's accommodation procedures, and in the event of an actual conflict, the ADA could preempt HB702.  Opening.Br.27–28.

Plaintiffs elevate one accommodation above all others—knowledge and disclosure of a healthcare worker's vaccination or immunity status—but fail to show that it is the *only* reasonable accommodation available to disabled individuals.  Opp'n.Br.18.  For one, the ADA defendant, not the

plaintiff selects the reasonable accommodation, and Montana was free "to remove one possible accommodation from consideration, so long as other reasonable options remain." *E.T*, 41 F.4th at 717–18. Additionally, "effective" accommodations are not the same as "reasonable" accommodations. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002). An effective accommodation that invades a third-party's rights is unreasonable. *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 680–81 (9th Cir. 2001) (en banc) (per se rule that an ADA accommodation cannot implicate collectively bargained rights); 2-ER-177; 2-ER-151 (Intervenor collectively bargained for no mandatory vaccinations). The ADA doesn't apply to accommodations that impose undue hardships on an employer or coworkers. *Id.* at 680. And requiring accommodations that "cannot be undone at the end of the workday" imposes an unreasonable burden under any standard. *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA* ("*NFIB*"), 142. S. Ct. 661, 665 (2022) (quotation marks omitted).

Nothing in HB702 prevents Plaintiffs from engaging in an interactive process and determining whether an individual's disability can be accommodated without considering other individuals' vaccination status, such as by requiring "personal protective equipment" or "social

distancing." *See* 1-ER-23.[5] Even the district court recognized that health care settings could "reduce the risk of exposure through other possible methods such as using specialized personal protective equipment or requiring physical distancing" when non-immune staff treat patients. 1-ER-23. The EEOC also provides examples of non-vaccine-related accommodations. 2-SER-347. In short, Plaintiffs fail to show that their preferred accommodation is the only reasonable accommodation available under the ADA. *See E.T.*, 41 F.4th at 718. Plaintiffs fail to show that the ADA preempts HB702.

## 2. The district court erred in interpreting MCA § 49-2-312(3)(b).

As explained previously, MCA § 49-2-312(3)(b) allows Providence and other covered "health care facilit[ies]" to take reasonable measures to safeguard immunocompromised individuals[,]" thus "avoiding any conflict with the ADA." Opening.Br.34; *see also id.* at 34–36. Yet Plaintiffs double down on the district court's erroneous construction of MCA § 49-

---

[5] Providence and WMC's inconsistent testimony that declining a vaccination gives knowledge of vaccination status (or doesn't) also ignores that knowledge of vaccination status isn't required to implement uniform "personal protective equipment" measures. 2-ER-96; 2-ER-114–115; 2-SER-409.

2-312(3)(b)(ii), which it misread as "protect[ing] those who are not vaccinated or immune," and thus concluded that HB702 could force health care providers like Providence to violate the ADA. *See* Opp'n.Br.26; *see also* 1-ER-25.

But even if the district court's selective reading of MCA § 49-2-312(3)(b) is the more natural one (it isn't), courts "are obligated to construe … statute[s] to avoid constitutional problems if it is fairly possible to do so." *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (cleaned up). There's no question that MCA § 49-2-312(3)(b) may be fairly construed to avoid the constitutional problems Plaintiffs raise. HB702 allows covered facilities to treat vaccinated and non-vaccinated personnel differently "to protect the safety and health of employees, patients, visitors, and other persons from communicable diseases," MCA § 49-2-312(3)(b)(i), (ii). Title VII, after all, requires accommodating religious exemptions from vaccinations. Opening.Br.26; 2-SER-381.

Rather than construing the statute to avoid constitutional problems, Plaintiffs (and the district court) strain to create them. Opp'n.Br.28 (concluding that HB702 prevents them from "taking *any action* based upon, or even *knowing*, the vaccination or immunity status of their

13

staff."); *but see* 1-SER-142:9 (anyone may ask about someone's vaccination status). In effect, they read subsection 3(b)—which addresses many of Providence's concerns—out of the statute. *But see City of L.A. v. Barr*, 941 F.3d 931, 939 (9th Cir. 2019) (courts must give effect to all statutory provisions).

## B. The district court incorrectly determined that the OSH Act's general duty clause preempts HB702.

The OSH Act doesn't apply to state vaccination policies. *See* Opening.Br.44–48. But even if it does, HB702 survives unless the Secretary promulgated a specific standard under 29 U.S.C. § 655.

The saving clause in 29 U.S.C. § 667(a) preempts the preemption of generally applicable state laws. So, HB702 survives even if it conflicts with the general duty clause. HB702 also can't conflict with the general duty clause because Congress didn't authorize OSHA to issue a sweeping vaccine mandate. *See NFIB*, 142 S. Ct. at 665; *accord Flower World, Inc. v. Sacks*, 43 F.4th 1224, 1232 (9th Cir. 2022).

### 1. The OSH Act expressly saves generally applicable state laws.

The district court's factual findings can't overcome the clear limits on preemption imposed by Congress. *See* 29 U.S.C. § 667(a). Section 667

14

represents the intentional choice of Congress to create a single uniform set of "standards" but allow states to regulate in areas "to which no standard is in effect." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 100 (1992) (plurality op.); *see also id.* at 112 (Kennedy, J., concurring) (agreeing with the plurality analysis). When a federal standard exists, state rules must fall. *See Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1310 (9th Cir. 1997). But without specific federal standards, state laws aren't preempted. *Gade*, 505 U.S. at 107 (plurality op.); *see also Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1207 (10th Cir. 2009); 86 Fed. Reg. 61406 ("[T]he OSH Act does not preempt state laws of 'general applicability' that regulate workers and non-workers alike, so long as they do not conflict with an OSHA standard.")

Ignoring the statutory text, Plaintiffs claim the saving clause only applies to state regulations "consistent with the general duty clause." Opp'n.Br.37. The Tenth Circuit, however, rejected a similar claim that the general duty clause, absent a federal standard, displaces state laws affecting worker safety. *Ramsey Winch*, 555 F.3d at 1208.[6] In *Ramsey*

---

[6] The *Flower World* district court favorably cited *Ramsey Winch Inc. Flower World, Inc. v. Sacks*, 2021 U.S. Dist. LEXIS 145251, at * 8–9 (W.D.Wash. Aug. 3, 2021) *aff'd Flower World, Inc.*, 43 F.4th 1224.

*Winch*, Oklahoma prohibited employers from banning their employees from storing firearms in locked vehicles on company property. 555 F.3d at 1202. The employer had a policy prohibiting firearms on company property and sued arguing that workplace violence is a recognized hazard. *Id.* at 1202–03. While OSHA recognized the danger of workplace violence, the agency didn't "promulgate[] any mandatory standards regarding workplace violence." *Id.* at 1205. The Tenth Circuit applied a presumption that "Congress did not intend the OSH Act" to preempt "Oklahoma's police powers." *Id.* at 1205. The Court concluded "'state laws of general applicability … that do not conflict with OSHA standards and that regulate the conduct of workers and non-workers alike [are] generally *not* … preempted.'" *Id.* at 1207 (quoting *Gade*, 505 U.S. at 107) (emphasis in original). Since OSHA hadn't issued specific regulations, the general duty clause couldn't override Oklahoma's traditional police powers. *Id.*

It's true that the general duty clause sets a minimum standard for employers. But in the preemption context, that minimum standard is itself preempted by the saving clause when there's no specific standard. 29 U.S. § 667(a).

16

Nor can Plaintiffs point to a specific standard. 1-ER-30–31. As the Supreme Court acknowledged, before the COVID-19 ETS, "OSHA, in its half century of existence," never mandated vaccination as an occupational standard. *NFIB*, 142 S. Ct. at 666. When OSHA sought to create such a standard, it lacked authority to do so. *Id*.

The illogical consequence of the district court order is that while OSHA lacks authority to issue a vaccine mandate, the OSH Act prohibits states from regulating in the same space. 1-ER-30–31. This Court should reverse.

## 2. The general duty clause doesn't apply.

The general duty clause isn't an independent grant of authority to OSHA to regulate conduct that it is otherwise not authorized to address. *Flower World, Inc.*, 43 F.4th at 1227. It protects employees under "special circumstances for which no standard has yet been adopted." *Ramsey Winch*, 555 F.3d at 1205. And the OSH Act only "empowers the Secretary to set workplace safety standards, not broad public health measures." *NFIB*, 142 S. Ct. at 665.

Plaintiffs cherry-pick language from *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440 (9th Cir. 1994), to argue that this Court "view[s]

17

the absence of specific regulations … as of no special significance." Opp'n.Br.36 (quoting *Reich*, 32 F.2d at 445). Wrong. *Reich* dealt with the Secretary's authority to investigate potential violations under the general duty clause against a private party—not preemption. 32 F.3d at 445. The Secretary can investigate under the general duty clause in the absence of a specific standard. That's, however, completely irrelevant to whether the general duty clause preempts a state law.

The district court, and Plaintiffs, ignore OSHA's limited authority by pointing to statutory authority granted to other federal agencies. 1-ER-29; Opp'n.Br.39. Statutory authority is specific to the agency. *Compare NFIB*, 142 S. Ct. 661 to *Biden v. Missouri*, 142 S. Ct. 647 (2022). *NFIB* clearly and unmistakably denies OSHA the general authority to issue a vaccine mandate. 142. S. Ct. at 666. And this Court in *Flower World* recognized the same. 43 F.4th at 1231–32.

Congress speaks clearly when it intends an agency to regulate vaccines. *See, e.g.,* 42 U.S.C. § 264(a) (Centers for Disease Control); 21 U.S.C. § 321(g); 42 U.S.C. § 262(i)(1) (Federal Drug Administration). Congress didn't grant OSHA authority to mandate vaccinations. *NFIB*, 142 S. Ct. at 665. "A vaccination, after all, 'cannot be undone at the end

of the workday.'" *Id.* (quoting *In re MCP No. 165*, 20 F. 4th 264, 274 (6th Cir. 2021) (Sutton, C. J., dissenting)).  When OSHA mandates anything related to vaccination policies, it's limited to requiring employers to *offer* vaccines for exposed workers.  29 C.F.R. § 1910.1030(f)(1)(i), (f)(2)(i); 86 Fed. Reg. at 61436.

Plaintiffs halfheartedly advance the idea that HB702 itself constitutes a "special" or "unintended" circumstance given that Montana was the first state to enact robust protections for medical autonomy.  Opp'n.Br.36.n.8.  But OSHA considered state laws in its ETS and hasn't reasserted a vaccination requirement post-*NFIB*.  86 Fed. Reg. 61440.

Most fatal to Plaintiffs' argument is that, years before HB702, Intervenor collectively bargained to make nurses not subject to mandatory vaccinations or immunizations. 2-ER-177; 2-ER-151.  According to Plaintiffs, that policy was "dangerous" because it "outlaw[ed] commonplace, nationally accepted workforce safety practices in health care settings."  Opp'n.Br.36.  One can't help but ask why employees would negotiate a dangerous general duty clause violation into their contract.

Further, Plaintiffs' pre-HB702 OSHA policies never mentioned mandatory vaccinations or disclosure of vaccination status.  *See, e.g.*, 2-

ER-239, 243, 247; 2-ER-208–09; 2-ER-202, 207; 2-ER-197–98. That's because a standard part of Plaintiffs' vaccination regime has been a liberal exemption process. 2-ER-96:4–12; 2-ER-134; 2-ER-208; FER-51. If, as Plaintiffs claim, the lack of vaccinations or knowledge of vaccination status truly was a "hazard" putting employers at risk of failing OSHA's minimum standards, OSHA would have regulations related to unvaccinated employees. But it doesn't.[7]

The district court's attempt at distinguishing *Flower World*, 1-ER-30, fares no better because no "targeted regulations" exist. *NFIB*, 142 S. Ct. at 665–66. And the district court assumed too much that Congress intended to preempt State vaccination policies through the OSH Act. 1-ER-30. State policies, after all, predate federal policies and both OSHA and CMS acknowledged that this matter traditionally rests within the states' police powers. 86 Fed. Reg. 61567–68; *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

---

[7] OSHA itself rejected Plaintiffs' abatement argument by stating the Secretary could rarely show the feasibility of abatement measures under the general duty clause. 86 Fed. Reg. 61442–43; Opening.Br.45–46; Opp'n.Br.39–40.

### *3. The district court failed to apply necessary pre-sumptions against preemption.*

The district court incorrectly concluded Plaintiffs cannot comply with both the OSH Act and HB702.  1-ER-29; Opp'n.Br.35; *but see* FER-3–49; 1-SER-114.  Compounding the error, the district court failed to cite—much less analyze—this Court's consistent statements warning against finding preemption lightly.  1-ER-20; 1-ER-27.  Applying this Court's precedents requires reversing the district court.  *See* Opening.Br.42; *accord Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

The State entered specific evidence that Providence's vaccination policies—that complied with HB702—did not lead to any infectious disease control deficiency findings.  FER-3–49; 1-SER-114.  Providence's CEO acknowledged as much on the stand.  1-SER-114.  Plaintiffs failed to provide a single instance of the Secretary pursuing a complaint, or violation, of OSHA based on their vaccination policies.

That must be fatal.  First, Plaintiffs recommended different vaccinations—but none mandated vaccination through OSHA policies.  *See supra* at 2; 2-ER-239, 243, 247; 2-ER-208–09; 2-ER-202, 207; 2-ER-197–98; *see also* 86 Fed. Reg. 61442 ("the General Duty Clause does not provide employers with specific requirements to follow").  Second, Plaintiffs

failed to point to any instance while those policies were in effect alongside HB702 that cause an OSHA violation. *E.g.*, 1-SER-114. The evidence simply doesn't support a hidden, specific vaccination policy requirement embedded in the general duty clause.

The district court ignored these facts and incorrectly relied on hypothetical conflicts. Preemption requires more. *See Napolitano*, 544 F.3d at 983.

## C. The Court should apply *Munsingware* vacatur to the CMS claims.

The CMS claims are moot now that the IFR has disappeared. Plaintiffs don't argue otherwise. Opp'n.Br.43–44. Instead, they posit the "ruling itself is not moot" because the district court's injunction expired. Opp'n.Br.43.

That's wrong. Mootness concerns the legal claim. *See Donovan v. Vance*, 70 F.4th 1167, 1171–72 (9th Cir. 2023). As in *Donovan*, withdrawal of the federal worker vaccine mandate prevented this Court from affording relief premised on a rule that no longer exists. *Id.* at 1172. And "the expiration of an injunction challenged on appeal moots the appeal." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 782 (9th Cir. 2019)

Plaintiffs advance the outlandish theory (without any supporting authority) that "CMS did not repeal its prior regulation" but "withdrew it." Opp'n.Br.44. That's a distinction without a difference. *See Donovan*, 70 F.4th at 1171–72 (challenged rule was "revoked"). The APA "make[s] no distinction … between initial agency action and subsequent agency action undoing or revising that action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). In other words, it makes no difference whether an agency declares it is repealing, rescinding, revoking, or withdrawing a rule. What matters is that "COVID-19 vaccination policies and procedures for health care staff [are] no longer [] required under the [Conditions of Participation], [Conditions for Coverage], and [Requirements for Participation]." 88 Fed. Reg. 36485, 36488 (June 5, 2023). It's moot.

"[V]acatur is generally automatic in the Ninth Circuit when a case becomes moot on appeal." *NASD Disp. Resol., Inc. v. Jud. Council*, 488 F.3d 1065, 1068 (9th Cir. 2007). Without vacatur, "the lower court's judgment … would escape meaningful appellate review thanks to the happenstance of mootness." *Id.* (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). This Court "decline[s] to apply *Munsingwear* vacatur

only when the party seeking appellate relief fails to protect itself or is the cause of subsequent mootness." *Donovan*, 70 F.4th at 1172 (quotation omitted). Otherwise, "happenstance" mootness caused by a non-party satisfies the equitable and public interests in vacatur. *NASD Dispute Resolution, Inc.*, 488 F.3d at 1068–69. CMS's—not the State's—actions mooted this claim. 88 Fed. Reg. at 36488. Vacatur is appropriate.

Plaintiffs imagine non-existent future harms. Opp'n.Br.43 ("actions taken by CMS-covered facilities during the time the CMS IFR was in place … should still be protected from the prohibitions under MCA 49-2-312."). Any complaints filed during this period would still be subject to the law in effect at the time of filing. *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 265 (1994). Vacatur doesn't vacate the IFR, it vacates an unreviewable lower court order. All parties retain the ability to litigate the issue should it arise. *See Munsingwear*, 340 U.S. at 40; *see also Donovan*, 70 F.4th at 1173 (a vacated opinion may still be cited for its persuasive weight).

Plaintiffs erroneously claim a self-expiring lower court order evades *Munsingwear*. Opp'n.Br.43. It doesn't. *See Kitlutsisti v. ARCO Alaska, Inc.*, 782 F.2d 800, 801 (9th Cir. 1986) (vacating judgment below after

24

expiration of injunction because appeal was moot). That would under-mine the doctrine's purpose. *See Munsingwear*, 340 U.S. at 40.

Ultimately, Plaintiffs acknowledge that their CMS claim isn't live and that this Court cannot review the lower court judgment. Opp'n.Br.43. That triggers vacatur. *Donovan*, 70 F.4th at 1173; *Kitlutsisti*, 782 F.2d at 801.

## II. HB702 doesn't violate equal protection.

The district court flipped rational basis jurisprudence on its head. *See* 1-ER-31–34. Despite conceding that "[i]f § 49-2-312's purpose was to promote public health, … it would pass rational basis review," *see* 1-ER-34, it refused to consider Montana's public health rationales (or any other) for regulating the exempted facilities differently because HB702 is an anti-discrimination statute. 1-ER-34–35. That directly conflicts with binding precedent. *See, e.g., Heller v. Doe,* 509 U.S. 312, 320 (1993); *Gall-inger v. Becerra*, 898 F.3d at 1012 (9th Cir. 2018). For that reason alone, this Court should reverse.

### A. Plaintiffs fail to establish similarly situated classes.

The district court found that HB702 created three classifications for Montana health care facilities and providers that it subjects to

differential treatment—exempt facilities,[8] hospitals, and offices of private physicians ("OPPs").  1-ER-33.  The question, then, is whether the exempt facilities, hospitals, and OPPs are "similar in those respects that are relevant to [Montana]'s own interests and its policy."  *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017).  As enacted, HB702 advances *two* policy interests: safeguarding personal autonomy and protecting the health and safety of vulnerable patient populations in congregate settings.  *See* 2-ER-258 (explaining that HB702 amendment would aid exempt facilities' compliance with CMS guidance and regulations); 86 Fed. Reg. 26306, 26306 (May 13, 2021) (explaining that individuals in congregate settings "are at greater risk of acquiring infections … [and] face higher risk of severe illness due to age, disability, or underlying health conditions").  But Montana's public health interest—not its personal autonomy interest—supported § 49-2-313's exemption. So the question for this Court is whether the exempt facilities, hospitals, and OPPs are "arguably indistinguishable" with respect to Montana's interest in protecting public health.  *See United States v. Devlin*, 13 F.3d 1361, 1363

---

[8] Section 49-2-313 exempts licensed nursing homes, long-term care facilities, and assisted living facilities from § 49-2-312's requirements.

(9th Cir. 1994); *Ariz. Dream Act*, 855 F.3d at 966. On this record, they're not.

Montana showed that the exempted facilities are subject to different regulatory schemes than both OPPs and hospitals based on the patient populations served. *See* Opening.Br.51–52; *see also* 1-SER-115–116 (exempt facility populations suffered disproportionate COVID-19 mortality rates). For example, assisted living facilities and long-term care facilities—both exempted under § 49-2-313—are regulated under Title 50, which regulates various health care facilities and imposes distinct licensing and regulatory requirements. *See, e.g.*, MCA §§ 50-5-227(1)–(3), 50-5-226(8)(d); MCA § 50-5-225; MCA §§ 50-5-1101, *et seq.*

Hospitals are also regulated under Title 50, but given the patient populations and services provided, they are subject to regulatory requirements distinct from those that apply to the exempt facilities. *See, e.g.*, MCA § 50-5-101(25); § 50-5-101(31); § 50-5-101(6). Hospitals—not OPPs—can have NICUs, which have more intensive regulations and infection controls. *See* Opening.Br.52. On the other hand, OPPs, like FVU and WMC, are regulated under Title 37, which, as relevant here, governs providers not facilities.

27

As these differences in regulatory schemes show, the three classified groups are regulated differently—and were even before HB702's passage—based on the level of care provided at each facility and the patient populations served.  And with respect to Montana's interest in protecting the health of its vulnerable patient populations in congregate settings, *see Ariz. Dream Act Coal.*, 855 F.3d at 957, the three classified groups are not "arguably indistinguishable," *see Devlin*, 13 F.3d at 1363 (quoting *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)).

Plaintiffs describe these as "minor regulatory differences" but then aver that what really matters is that they "treat the same types of patients, in similar settings."  Opp'n.Br.50.  By that logic, all healthcare settings—no matter how they're regulated, their infection control procedures, or the services they provide—are similarly situated if they serve at least some immunocompromised patients.

The district court's sparse factual findings fail to show that the patient populations served were generally the same across the three

classified groups.[9]  As detailed previously, the district court found that Providence operates a single facility that includes a hospital, an exempted facility, and an OPP, so nurses or other staff may work in one or more of the three facilities.  Opening.Br.53–54 (citing 1-ER-33–34).  It also found that physicians at FVU and WMC treated patients at hospitals and their OPPs.  *Id.*  And it found that each setting treated elderly and immunocompromised patients.  *Id.*  Yet the district court ignored the exempt facilities suffered far higher COVID-19 mortality.  *See id*; 1-SER-115–116.  The record simply fails to show that these classified groups are similar "in respects that are relevant to the state's challenged policy." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (quotations omitted).

---

[9] Once again, to defend the district court's factual conclusions following a bench trial, Plaintiffs must point to actual findings by the district court under Rule 52(a)—and here, the district court made few, if any, relevant findings.  *See supra* note 2.  This Court does not, as Plaintiffs believe, apply clear error review to contested trial evidence and testimony. Opp'n.Br.48–49 (collecting trial evidence, not referenced by district court, that they claim supports the district court's findings); *cf. Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) ("findings are reviewed for clear error").

**B. HB702 easily satisfies rational basis review.**

Rather than searching for plausible interests that could sustain Montana's policy choice—as binding precedent requires, *see Heller*, 509 U.S. at 320; *Gallinger*, 898 F.3d at 1017—the district court created a rule that anti-discrimination statutes cannot *as a matter of law* also address public health interests.  Because the district court believed the sole interest supporting HB702 was the protection of individual privacy rights, it found—without any citation to supporting authority—that "there is no rational relationship between the statute's *stated purpose* and its impact on different health care settings."  1-ER-29–30 (emphasis added); *see also* 1-ER-31 ("Defendants *did not prove or even convincingly argue* that § 49-2-312 is 'facially related to health and safety issues.'" (emphasis added)).  In other words, the district court invented a rule whereby an exemption to a statute must serve the same interest as the statute itself.

In *Gallinger*, however, this Court expressly rejected the district court's rationale.  898 F.3d at 1017 ("Plaintiffs contend, the Legislature's stated purpose in enacting SB 707 was to reduce the number of guns on school grounds, so, if we are to uphold the legislation, we must find the retired-officer exception … rationally related to this specific goal.  We

30

disagree."). Likewise, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 547 (9th Cir. 2004), held that states can rationally protect the health and safety of women seeking abortions while also exempting smaller clinics based on the administrative burden. *Id.*

States may include exemptions in legislation that, in part, cut against the law's primary purpose. After all, most exemptions to statutes won't accomplish the same goal as the statute itself. Like the ADA, *see* Opening.Br.60–61, the Arizona statute in *Tucson Woman's Clinic* and the OSH Act, 29 C.F.R. § 1904.1(a)(1), the exemptions serve different goals than the general legislative object. And Montana may balance personal autonomy and public health, as it did in HB702, without mathematical precision.

Plaintiffs argue that HB702 fails rational basis because Montana's personal privacy interest isn't rationally related to § 49-2-313's exemption. Opp'n.Br.55–56. Simply stating the argument refutes it. Framed properly, Montana's public health interest is no doubt rationally to exempting facilities with generally higher concentrations of vulnerable patients from § 49-2-313's operations. *See Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992); *Tucson Woman's Clinic*, 379 F.3d at 544.

Montana drew rational distinctions between and among exempt and non-exempt facilities. *See* Opening.Br.61–66. There was ample reason to believe that CMS would only require vaccinations as a condition of participation for the exempted facilities. Opening.Br.61–63; *FCC v. Beach Commc'ns*, 508 U.S. 307, 320 (1993).

Even if Montana assumed the exempted facilities would be treated identically under CMS guidance and regulations, it had a rational basis for regulating the exempted facilities differently because the core services they provide and the populations they serve are generally different. *See First Resort, Inc. v. Herra*, 860 F.3d 1263, 1279 (9th Cir. 2017). The combination of congregate settings and elderly populations in the exempted facilities warranted special protection, and there's no evidence in the record that hospitals and OPPs required a similar degree of protection. *See* Opening.Br.63–64; 1-SER-115–116; *see also* 1-ER-32–40 (no factual findings on relative number of high-risk patients served in each setting).

Nor is the differential treatment of hospitals and OPPs new. Opening.Br.64–65. Hospitals, like Providence, are licensed "healthcare facilities" and regulated under Title 50, *see* MCA, § 50-5-101(26)(a), and they are subject to the more burdensome requirements imposed on covered

facilities. Opening.Br.64–65. OPPs, like FVU and WMC, are regulated separately under Title 37, *see* MCA, § 50-5-101(26)(b), and none of the foregoing requirements apply to OPPs. Opening.Br.65. Montana could reasonably permit healthcare facilities, and not OPPs, to treat employees differently based on presumed vaccination status if they implement reasonable accommodation measures. On this record, there's no basis to conclude that Montana's distinction between OPPs and other healthcare facilities was irrational or arbitrary. *See Nordlinger*, 505 U.S. at 11; *Tucson Woman's Clinic*, 379 F.3d at 544.

None of this Court's precedents identified by Plaintiffs support the district court's conclusion. *Merrifield v. Lockyer* 547 F.3d 978 (9th Cir. 2008), involved two critical factors that aren't present here. First, "the record highlight[ed] that the irrational singling out of three types of vertebrate pests from all other vertebrate animals was designed to favor economically certain constituents at the expense of others similarly situated." *Id.* at 991. Second, *Merrifield* "presented a unique set of facts," *Allied Concrete & Supply Co. v. Baker, 90*4 F.3d 1053, 1065 (9th Cir. 2018), because there was also a due process challenge to the licensing scheme and the only rationale supporting the exemption directly

33

contradicted the rationale used by this Court to survive the due process challenge. *Merrifield*, 547 F.3d at 991.

*Silveira v. Lockyer*, 312 F.3d 1052, 1087–88 (9th Cir. 2002), likewise offers no help. There, exemptions in California's assault weapons bans for retired police offers was "'wholly unconnected to any legitimate state interest.'" *Gallinger*, 898 F.3d at 1017 (9th Cir. 2018) (quoting *Silveira*, 312 F.3d at 1091). That the retired officers exception was contrary to the act's legislative goals was insufficient on its own to overcome rational basis. *See Gallinger*, 898 F.3d at 1017 (citing *Silveira*, 312 F.3d at 1091). Ultimately, this Court could not "identify any hypothetical rational basis for the exception." *Silveira*, 312 F.3d at 1090. By contrast, the Montana Legislature had ample reason to exempt nursing homes, assisted living facilities, and long-term care facilities because of the congregate setting and the high-volume of vulnerable patients, even if the classifications are "to some extent both underinclusive and overinclusive." *Gallinger*, 898 F.3d at 1018.

Plaintiffs fall back to *City of Cleburne* and *Romer*. Opp'n.Br.58–59. They fail to point to anything—*at all*—suggesting a "bare … desire to harm a politically unpopular group" motivated HB702. *Trump v. Hawaii*,

34

138 S. Ct. 2392, 2420 (2018). Neither *City of Cleburne* nor *Romer* suggest that HB702 fails rational basis review. *See Ariz. Dream Act*, 855 F.3d at 970 (citing *City of Cleburne* and *Romer* to conclude state law motivated by "dogged animus" failed rational basis); *see also Gallinger*, 898 F.3d at 1020 (rejecting animus claim unsupported by specific factual allegations).[10]

Finally, Plaintiffs tack on three quasi-substantive due process arguments. Plaintiffs, however, didn't make a substantive due process challenge to HB702 itself, so this Court should disregard them. *Cf. Swan*, 6 F.3d at 1383. Should the Court consider them, they fall flat.

First, Plaintiffs opine that HB702 "is not rationally related to a legitimate state interest because it is antithetical to the proper exercise of a state's police power—elevating individual rights over the public good." Opp'n.Br.54 (citing *Jacobsen v. Massachusetts*, 197 U.S. 11 (1905)). This tortured reading of *Jacobsen* fundamentally misunderstands the State's police power. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Our Constitution

---

[10] *Christian Heritage Academy v. Oklahoma Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1035 (10th Cir. 2007), also concerned improper animus.

principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'") (quoting *Jacobson*, 197 U.S. at 38).   Subject to constitutional constraints, a state's police power also includes the authority for HB702.   *See Brnovich v. Biden*, 562 F. Supp. 3d 123, 157 (D. Ariz. 2022) ("Although "[t]his traditional 'police power' includes authority over compulsory vaccination …. It also includes, as a general matter, power to prohibit vaccination from being compelled.").

Second and third, Plaintiffs claim HB702 is irrational because it "forces physicians to violate their Hippocratic oath and national standards of care" and "Montana statutes specifically require vaccination in schools and daycares."  Opp'n.Br.59.  Once again, if these arguments had any teeth, Plaintiffs could have launched a substantive due process challenge to HB702.  The standards of care argument is baseless.  *See Dent v. West Virginia*, 129 U.S. 114, 123 (1889); *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007); *supra* at 2–3.  The childhood vaccination argument suffers from many flaws, including contradicting Plaintiffs other equal protection arguments.  *See* Opp'n.Br.50.  It also undercuts any purported

36

harms related to HB702, given that most children will have already been vaccinated against most diseases.  *See* MCA § 20-5-403; ARM 37.114.705.

## CONCLUSION

The district court's errors were many and manifest.  This Court should reverse.

DATED this 6th day of November, 2023.

AUSTIN KNUDSEN
 *Montana Attorney General*

/s/ Brent Mead
BRENT MEAD
 *Deputy Solicitor General*
CHRISTIAN B. CORRIGAN
 *SOLICITOR GENERAL*
MICHAEL D. RUSSELL
 *Assistant Attorney General*
Montana Department of Justice
 215 North Sanders
 P.O. Box 201401
 Helena, MT 59620-1401
 p. 406.444.2026
 brent.mead2@mt.gov
 michael.russell@mt.gov
 christian.corrigan@mt.gov

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. Rule 32(a)(7)(B)(ii) and 9th Cir. R. 32-1(b), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 7,000 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

*/s/ Brent Mead*
BRENT MEAD

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: November 6, 2023   */s/ Brent Mead*
BRENT MEAD

38